## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Jennifer L.,

      Plaintiff,

v.

Commissioner of the Social Security
Administration,

      Defendant.

Case No. 23-cv-1822 (KMM/TNL)

**REPORT &
RECOMMENDATION**

James H. Greeman, Greeman Toomey, 250 Second Avenue South, Suite 120,
Minneapolis, MN 55401; and Kira Treyvus, Konoski & Partners PC, 305 Broadway,
Seventh Floor, New York, NY, 10007 (for Plaintiff); and

Ana H. Voss, Assistant United States Attorney, United States Attorney's Office, 300
South Fourth Street, Suite 600, Minneapolis, MN 55415; and James Potter and James D.
Sides, Special Assistant United States Attorneys, Social Security Administration, 6401
Security Boulevard, Baltimore, MD 21235 (for Defendant).

## I. INTRODUCTION

Plaintiff Jennifer L. brings the present case, contesting Defendant Commissioner
of the Social Security Administration's denial of her application for disability insurance
benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 401 *et seq.* This
matter has been referred to the undersigned for a report and recommendation to the
district court, the Honorable Katherine M. Menendez, District Judge for the United States
District Court for the District of Minnesota, under 28 U.S.C. § 636 and D. Minn. LR
72.1.

1

Based upon the record, memoranda, and proceedings herein, **IT IS HEREBY RECOMMENDED** that Plaintiff's request for relief be **DENIED**; the Commissioner's request for relief be **GRANTED**; and the decision of the administrative law judge ("ALJ") be **AFFIRMED**.

## II. PROCEDURAL HISTORY

Plaintiff applied for DIB asserting that she has been disabled since March 2020 due to multiple sclerosis, fibromyalgia, anxiety, and depression.[1]  Tr. 31, 74, 97, 99, 100. Plaintiff's application was denied initially and again upon reconsideration.  Tr. 31, 95, 97, 99, 111.

Plaintiff appealed the reconsideration of her DIB determination by requesting a hearing before an ALJ.  Tr. 31, 130-31.  A hearing was held and the ALJ subsequently issued an unfavorable decision.  Tr. 31-44, 52-72.  Plaintiff requested review from the Appeals Council, which was denied.  Tr. 21-23.

Plaintiff then filed the instant action, challenging the ALJ's decision.  *See generally* Compl., ECF No. 1.  Pursuant to the Supplemental Rules for Social Security Actions Under 42 U.S.C. § 405(g), Plaintiff's challenge to the denial of disability benefits "is presented for decision" by the Court on "the parties' briefs."  Fed. R. Civ. P. Supp. Soc. Sec. R. 5; *see generally* Pl. Br., ECF No. 8; Comm'r Br., ECF No. 10.

---

[1] Plaintiff's alleged visual impairments and high blood pressure were found to be non-severe impairments and are not at issue.  *See* Tr. 33-34, 74, 100.

### III. ALJ'S DECISION

In relevant part, the ALJ found that Plaintiff had the severe impairments of obesity, multiple sclerosis, fibromyalgia, neurocognitive disorder, major depressive disorder, and anxiety disorder, and that none of these impairments individually or in combination met or equaled a listed impairment in 20 C.F.R. pt. 404, subpt. P, app. 1. Tr. 33-37.

The ALJ found that Plaintiff had the residual functional capacity to perform light work[2] except that Plaintiff was limited to "stand[ing] and/or walk[ing] for two hours in an eight-hour workday" and "sit[ting] up to six hours in an eight-hour workday." Tr. 37. Plaintiff also had the following additional limitations:

> She can push and pull frequently except for the limitations in lifting and carrying. She can climb ramps and stairs occasionally but can never climb ladders, ropes, or scaffolds. She can balance, stoop, kneel, crouch, or crawl occasionally. She can handle and finger frequently but not constantly and feel occasionally with both upper extremities. She can tolerate occasional exposure to extreme cold, and vibration. She cannot work around unprotected heights or dangerous equipment. She can carry out simple instructions with acceptable persistence and pace. Simple instructions are those that can be learned in thirty days or less. She can

---

[2]

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b). At the hearing, the vocational expert testified that there were no light jobs available given the walking and standing restrictions. Tr. 69. The vocational expert then proceeded to identify sedentary jobs that met the limitations identified by the ALJ. Tr. 69-70.

> tolerate occasional interaction with coworkers and the public.
> [She] is able to tolerate training, taking instructions, and
> supervisory interactions with supervisors but is otherwise
> limited to occasional contact with supervisors. She can
> tolerate occasional changes in [a] simple work setting and
> follow employer set goals.

Tr. 37.

Based on Plaintiff's age, education, work experience, residual functional capacity,

and the testimony of a vocational expert, the ALJ found that Plaintiff was capable of

performing the representative sedentary[3] jobs of hand painter, document specialist, and

lens block gauger. Tr. 43, 69-70; *see* Tr. 69 (vocational expert testifying no light jobs

available given walking and standing restrictions and identifying available sedentary

jobs); *see also supra* n.2. Accordingly, the ALJ concluded that Plaintiff was not under a

disability. Tr. 43.

### IV. ANALYSIS

This Court's "task is to determine whether the ALJ's decision complies with the

relevant legal standards and is supported by substantial evidence in the record as a

whole." *Lucus v. Saul*, 960 F.3d 1066, 1068 (8th Cir. 2020) (quotation omitted); *accord*

*Kraus v. Saul*, 988 F.3d 1019, 1024 (8th Cir. 2021); *see also Biestek v. Berryhill*, 139 S.

Ct. 1148, 1154 (2019). "Legal error may be an error of procedure, the use of erroneous

legal standards, or an incorrect application of the law." *Lucus*, 960 F.3d at 1068

(quotation omitted).

---

[3] *See supra* n.2.

4

"Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations." *Biestek*, 139 S. Ct. at 1154 (quotation omitted). "[T]he threshold for such evidentiary sufficiency is not high." *Id.*; *accord Ross v. O'Malley*, 92 F.4th 775, 778 (8th Cir. 2024). "It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek*, 139 S. Ct. at 1154 (quotation omitted); *accord Ross*, 92 F.4th at 778; *see, e.g.*, *Chismarich v. Berryhill*, 888 F.3d 978, 979 (8th Cir. 2018) (defining "substantial evidence as less than a preponderance but enough that a reasonable mind would find it adequate to support the conclusion" (quotation omitted)).

This standard requires the Court to "consider both evidence that detracts from the [ALJ's] decision and evidence that supports it." *Boettcher v. Astrue*, 652 F.3d 860, 863 (8th Cir. 2011); *accord Ross*, 92 F.4th at 778; *see Grindley v. Kijakazi*, 9 F.4th 622, 627 (8th Cir. 2021). The ALJ's decision "will not [be] reverse[d] simply because some evidence supports a conclusion other than that reached by the ALJ." *Boettcher*, 652 F.3d at 863; *accord Grindley*, 9 F.4th at 627; *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012). "The court must affirm the [ALJ's] decision if it is supported by substantial evidence on the record as a whole." *Chaney v. Colvin*, 812 F.3d 672, 676 (8th Cir. 2016) (quotation omitted). Thus, "[i]f, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." *Perks*, 687 F.3d at 1091 (quotation omitted); *accord Chaney*, 812 F.3d at 676; *see also Kraus*, 988 F.3d at

1024 ("This Court will disturb the ALJ's decision only if it falls outside the available zone of choice. An ALJ's decision is not outside the zone of choice simply because this Court might have reached a different conclusion had we been the initial finder of fact." (quotations and citations omitted)).

Disability benefits are available to individuals who are determined to be under a disability. 42 U.S.C. § 423(a)(1); *accord* 20 C.F.R. § 404.315. An individual is considered to be disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. § 404.1505(a). This standard is met when a severe physical or mental impairment, or impairments, renders the individual unable to do her previous work or "any other kind of substantial gainful work which exists in the national economy" when taking into account her age, education, and work experience. 42 U.S.C. § 423(d)(2)(A); *see also* 20 C.F.R. § 404.1505(a).

Disability is determined according to a five-step, sequential evaluation process. 20 C.F.R. § 404.1520(a)(4).

> To determine disability, the ALJ follows the familiar five-step process, considering whether: (1) the claimant was employed; (2) she was severely impaired; (3) her impairment was, or was comparable to, a listed impairment; (4) she could perform past relevant work; and if not, (5) whether she could perform any other kind of work.

*Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010). In general, the burden of proving the existence of disability lies with the claimant. 20 C.F.R. § 404.1512(a).

Plaintiff challenges the ALJ's determination of her residual functional capacity at step four. A claimant's "residual functional capacity is the most [she] can do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1); *see McCoy v. Astrue*, 648 F.3d 605, 614 (8th Cir. 2011) ("A claimant's [residual functional capacity] represents the most he can do despite the combined effects of all of his credible limitations and must be based on all credible evidence."); *see also, e.g.*, *Schmitt v. Kijakazi*, 27 F.4th 1353, 1360 (8th Cir. 2022). It includes "functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments, including the impact of any related symptoms." *Titles II & XVI: Assessing Residual Functional Capacity in Initial Claims*, SSR 96-8p, 1996 WL 374184, at *1 (Soc. Sec. Admin. July 2, 1996). "Because a claimant's [residual functional capacity] is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace." *Perks*, 687 F.3d at 1092 (quotation omitted); *accord Schmitt*, 27 F.4th at 1360.

At the same time, the residual-functional-capacity determination "is a decision reserved to the agency such that it is neither delegated to medical professionals nor determined exclusively based on the contents of medical records." *Norper v. Saul*, 964 F.3d 738, 744 (8th Cir. 2020); *see Perks*, 687 F.3d at 1092; *see also* 20 C.F.R. § 404.1546(c). "An ALJ determines a claimant's [residual functional capacity] based on all the relevant evidence, including the medical records, observations of treating

physicians and others, and an individual's own description of [his or her] limitations." *Combs v. Berryhill*, 878 F.3d 642, 646 (8th Cir. 2017) (quotation omitted); *accord Schmitt*, 27 F.4th at 1360; *Norper*, 964 F.3d at 744-45. As such, there is no requirement that a residual-functional-capacity determination "be supported by a specific medical opinion." *Schmitt*, 27 F.4th at 1360 (quotation omitted). Nor is an ALJ "limited to considering medical evidence exclusively." *Id.* (quotation omitted). Accordingly, "[e]ven though the [residual-functional-capacity] assessment draws from medical sources for support, it is ultimately an administrative determination reserved to the Commissioner." *Perks*, 687 F.3d at 1092 (quotation omitted); *accord Schmitt*, 27 F.4th at 1360; *see* 20 C.F.R. § 404.1546(c). Plaintiff bears the burden to establish her residual functional capacity. *Mabry v. Colvin*, 815 F.3d 386, 390 (8th Cir. 2016).

Plaintiff challenges the ALJ's treatment of certain medical opinions and assessment of the intensity, persistence and limiting effects of her symptoms.

### A. Consideration of the Opinion Evidence

With respect to the opinion evidence, Plaintiff's assertion of error relates to her ability to interact with others. According to Plaintiff, it was "the unanimous opinion of the mental healthcare providers retained by the [Social Security Administration] that [she] is restricted to brief and/or superficial contact with coworkers and supervisors," and, despite finding that "all these opinions were persuasive," the ALJ did not include a "social limitation restricting [her] to brief and/or superficial interaction with coworkers

and supervisors" and "provided no explanation for removing this limitation."  Pl. Br. at 15-16.[4]

### 1.  Opinion Evidence

At the initial stage, it was determined that a consultative examination was needed. Tr. 77, 78; *see* Tr. 664; *see also, e.g.*, 20 C.F.R. §§ 404.1512(b)(2) (obtaining a consultative examination), .1517 (consultative examination at agency expense). In relevant part, the consultative examiner opined that Plaintiff's "general mental capacity for . . . responding appropriately to brief and superficial contact with coworkers and supervisor[s] . . . appear[s] to demonstrate a moderate to marked level of impairment due to interference with current mental health and cognitive difficulties."  Tr. 667.

Following the consultative examination, the state agency psychological consultant on initial review opined that Plaintiff had limitations in her ability to interact with others. *See* Tr. 91-92.  This first state agency psychological consultant opined that Plaintiff was not significantly limited in her abilities "to interact appropriately with the general public"; "to ask simple questions or request assistance"; and "to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness."  Tr. 91-92.  Plaintiff was, however, moderately limited in her abilities "to accept instructions and respond appropriately to criticism from supervisors" and "to get along with coworkers or peers without distracting them or exhibiting behavioral extremes."  Tr. 91. The first state agency psychological consultant explained that Plaintiff's "ability to tolerate and respond appropriately to supervision would be reduced but adequate to

---

[4] The Court cites to the pagination generated by the Court's electronic filing system.

handle ordinary levels of supervision found in a customary work setting." Tr. 91. Additionally, Plaintiff's "ability to cope with co-workers would be reduced but adequate for brief and superficial contact." Tr. 92.

On reconsideration, a second consultative examination was conducted. Tr. 830. In relevant part, the second consultative examiner opined that Plaintiff "has the ability to have superficial contact with supervisors and coworkers." Tr. 837. A second state agency psychological consultant likewise concluded Plaintiff had limitations in her ability to interact with others and agreed with the findings of the first consultant.[5] Tr. 109.

As noted above, the ALJ determined that Plaintiff "can tolerate occasional interaction with coworkers and the public" and "is able to tolerate training, taking instructions, and supervisory interactions with supervisors but is otherwise limited to occasional contact with supervisors." Tr. 37. Although the ALJ found the opinions of the consultative examiners and the state agency psychological consultants to be "somewhat persuasive" overall, the ALJ found "the opined limitations in social interactions at the workplace" to be supported.[6] Tr. 40-41; see Tr. 41.

---

[5] An additional medical opinion from Andrew Spence, M.D., also addressed Plaintiff's ability to interact with others. See Tr. 766-68. The ALJ found Dr. Spence's opinion to be unpersuasive. Tr. 41. The treatment of Dr. Spence's opinion is not at issue.
[6] As such, Plaintiff accurately states that "[t]he ALJ found that all these opinions were persuasive with respect to the opined social limitation to brief and/or superficial contact with coworkers and supervisors." Pl. Br. at 16. The ALJ found these opinions were unsupported as to "marked limitations in [Plaintiff's] ability to carry out detailed or complex technical tasks," a "marked degree of limitation in any area of mental functioning," and "marked limitations in cognitive functioning." Tr. 41.

## 2. Superficial & Brief vs. Occasional Interactions

Plaintiff likens this case to the undersigned's decision in *Troy L. M. v. Kijakazi*, No. 21-cv-199 (TNL), 2022 WL 4540107 (D. Minn. Sept. 28, 2022). *See also, e.g.*, *Sara R. v. Kijakazi*, No. 22-cv-1271 (KMM/TNL), 2023 WL 4564421 (D. Minn. June 28, 2023), *report and recommendation adopted*, 2023 WL 4561312 (D. Minn. July 17, 2023). The comparison is not inapposite. *Troy L. M.* similarly included prior administrative medical findings from state agency psychological consultants that the claimant was able to handle brief and superficial contact with coworkers and the public. 2022 WL 4540107, at *8. In determining the claimant's residual functional capacity, the ALJ limited Plaintiff to "occasional interaction with others," finding the state agency psychological consultants to be generally persuasive. *Id.* at *9 (quotation omitted). The claimant asserted that the ALJ erred by "fail[ing] to include a limitation to superficial interaction with others in his residual functional capacity despite having found the prior administrative medical findings of the state agency psychological consultants to be persuasive and then fail[ing] to explain why this limitation was not included." *Id.* at *13. Observing that "[c]ourts have recognized that the terms 'occasional' and 'superficial' are not coterminous," the undersigned noted that "courts have explained that 'occasional contact' goes to the *quantity* of time spent with the individuals" whereas "'superficial contact' . . . goes to the *quality* of the interactions." *Id.* at *14 (quotations omitted). The undersigned ultimately remanded the matter "to allow the ALJ to explain why she found the prior administrative medical findings of the state agency psychological consultants to

be persuasive but declined to include a limitation to superficial interactions with others or explain how the residual functional capacity accommodated this limitation." *Id.* at *16.

Following the undersigned's decision in *Troy L. M.*, the Eighth Circuit Court of Appeals issued *Wyatt v. Kijakazi*, No. 23-1559, 2023 WL 6629761 (8th Cir. 2023) (per curiam), and *Lane v. O'Malley*, No. 23-1432, 2024 WL 302395 (8th Cir. 2024) (per curiam).[7] Both cases dealt with the same argument Plaintiff raises here, namely, a perceived disconnect between opinion evidence limiting a claimant to *brief and superficial* interactions with others and the inclusion of a limitation to *occasional* interaction with others in the residual functional capacity despite a finding that the opinion evidence was persuasive. *Lane*, 2024 WL 302395, at *1; *John W. v. Kijakazi*, No. 22-cv-2612 (PAM/TNL), 2023 WL 2540566, at *2-3 (D. Minn. Mar. 16, 2023), *aff'd sub nom. Wyatt v. Kijakazi*, No. 23-cv-1599, 2023 WL 6629761 (8th Cir. 2023) (per curiam).

In *Wyatt*, "[t]he ALJ determined that [the claimant] require[d] work involving only occasional incidental interaction with the public and that he cannot perform teamwork or work in tandem with others." *John W.*, 2023 WL 2540566, at *2 (quotation omitted). "The ALJ did not explicitly limit [the claimant's] interactions with coworkers and supervisors," and did not explain why not. *Id.* (quotation omitted). The district court concluded "the ALJ's determination regarding [the claimant's] ability to interact with others at work" was supported by substantial evidence. *Id.* The district court noted that the record contained evidence that the claimant was able to "get along with others,"

---

[7] *Wyatt* and *Lane* were both issued after the parties' principal briefs were filed in this case.

including going out with friends and enjoying his former telemarketing job where he got along with coworkers and "those whom he called." *Id.* The district court concluded that substantial evidence supported the residual-functional-capacity determination even though the ALJ "did not incorporate all of the specific social limitations" contained in the "credible" opinions. *Id.* at \*3. On appeal, the Eighth Circuit held that the ALJ "did not err in declining to include more restrictive limitations regarding interactions with coworkers and supervisors in [the claimant's] residual functional capacity." *Wyatt*, 2023 WL 6629761, at \*1. The Eighth Circuit explained that "[t]he ALJ was not required to adopt the exact limitations set forth in the opinions she found persuasive" and substantial evidence supported the findings "regarding [the claimant's] abilities to interact with others in the workplace." *Id.*

In *Lane*, "[t]he ALJ found that [the claimant] could respond appropriately to occasional interaction with supervisors and co-workers but should have no team or tandem work with co-workers and no interaction with the general public." 2024 WL 302395, at \*1. The claimant "argue[d] that the ALJ's reference to 'occasional' interactions [wa]s inconsistent with the shared opinion of two psychologists, which the ALJ found persuasive, that he could have 'superficial' interactions." *Id.* Like Plaintiff, the claimant "reason[ed] that because the terms are different—the former being about quantity and the latter about quality—omitting the psychologists' limitation renders the [vocational] expert's conclusion unreliable and the ALJ's decision without substantial evidence." *Id.* The Eighth Circuit "reject[ed] this manufactured inconsistency," noting that "[n]othing in the reference to 'occasional' interactions conflicts with th[e] opinion

13

[of the psychologists that the claimant could relate to others superficially, work in small groups, and maintain at least minimal relationships with others].” *Id.* The Eighth Circuit also pointed out that the ALJ addressed “the quality of [the claimant’s] workplace interactions” by including limitations for “no team, tandem, or public-facing work.” *Id.*

Plaintiff’s argument is premised on a “distinction between ‘superficial’ and ‘occasional’ interactions” on this same quantity/quality basis. *Jason L. v. O’Malley*, No. 23-cv-184 (JWB/JFD), 2024 WL 965547, at *5 (D. Minn. Jan. 26, 2024), *report and recommendation rejected*, 2024 WL 965240 (D. Minn. Mar. 6, 2024) [hereinafter *Jason L. II*]. Plaintiff asserts that “a limitation to occasional interactions does not account for a limitation to superficial and/or brief interactions as it only addresses the overall cumulative duration of interaction during the workday, not the quality of the interaction nor the length of each individual interaction.” Pl. Br. at 17. The Eighth Circuit “reject[ed]” such a distinction in *Lane*, calling it “manufactured.” 2024 WL 302395, at *1; *see Jason L.*, 2024 WL 965547, at *5. *But see Jason L. II*, 2024 WL 965240, at *2.

Plaintiff additionally argues that “[t]he ALJ also impermissibly substituted her lay opinion for that of the medical sources, all of whom opined that Plaintiff had substantially greater mental limitations,” and “[n]o medical source agrees that . . . Plaintiff only has the degree of limitation assessed by the ALJ.” Pl. Br. at 19. This argument appears to derive from the fact that the ALJ used “occasional” to describe Plaintiff’s interactions with others and did not mirror the “brief and superficial” language of the opinions. As such, it is based on the same quantity/quality distinction rejected in *Lane*.

Moreover, as stated in *Wyatt*, an ALJ is "not required to adopt the exact limitations set forth in the opinions she found persuasive." 2023 WL 6629761, at *1; *see Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016) ("[T]here is no requirement that a[ residual-functional-capacity] finding be supported by a specific medical opinion."); *accord Schmitt*, 27 F.4th at 1360. And, as the Commissioner points out, an ALJ is not required "to mechanically list and reject every possible limitation." *Nash v. Comm'r, Soc. Sec. Admin.*, 907 F.3d 1086, 1091 (8th Cir. 2018).

At bottom, Plaintiff argues that the opinions of the consultative examiners and the state agency psychological consultants "included greater social interaction limitations," Pl. Br. at 17, than are present in the residual functional capacity because "occasional" is "about quantity" and "superficial" is "about quality," *Lane*, 2024 WL 302395, at *1. Plaintiff did not unreasonably rely on *Troy L. M.* in advancing that quantity/quality argument. The Eighth Circuit has since held otherwise. *Lane*, 2024 WL 302395, at *1; *cf. Wyatt*, 2023 WL 6629761, at *1; *John W.*, 2023 WL 2540566, at *2-3.

Considering (1) the opinion evidence in the record regarding Plaintiff's ability to maintain superficial interactions with others; (2) the fact that an ALJ is "not required to adopt the exact limitations set forth in the opinions she f[inds] persuasive," *Wyatt*, 2023 WL 6629761, at *1; and (3) the Eighth Circuit's recent rejection of a distinction between "occasional" and "superficial" interactions on the same quantity/quality grounds asserted by Plaintiff here, *Lane*, 2024 WL 302395, at *1, the Court concludes that the limitation to occasional interactions with others is supported by substantial evidence in the record as a

whole.  *Cf. Charlita N. v. O'Malley*, No. 23-cv-1283 (NEB/DTS), 2024 WL 1667155, at
*1-2 (D. Minn. Apr. 15, 2024).  *But see Jason L. II*, 2024 WL 965240 at *1-2.

### B.  Intensity, Persistence & Limiting Effects of Plaintiff's Symptoms

Plaintiff also asserts that, when considering the intensity, persistence, and limiting
effects of her symptoms, the ALJ's use of the medical evidence was improper and the
ALJ  "mischaracterized [her] testimony concerning why she stopped working."  Pl. Br. at
22.

### 1.  Evaluating a Claimant's Statements Regarding Symptoms

When determining a claimant's residual functional capacity, an ALJ takes into
account the claimant's symptoms, such as pain, and evaluates the intensity, persistence,
and limiting effects of those symptoms.  *Titles II and XVI: Evaluation of Symptoms in
Disability Claims*, SSR 16-3p, 2016 WL 1119029, at *2 (Soc. Sec. Admin. Mar. 16,
2016) [hereinafter SSR 16-3p]; *see, e.g.*, *Bryant v. Colvin*, 861 F.3d 779, 782 (8th Cir.
2017) ("Part of the [residual-functional-capacity] determination includes an assessment
of the claimant's credibility regarding subjective complaints.").

> In considering the intensity, persistence, and limiting effects of
> an individual's symptoms, [the ALJ] examine[s] the entire case
> record, including the objective medical evidence; an individual's
> statements about the intensity, persistence, and limiting effects of
> symptoms; statements and other information provided by medical
> sources and other persons; and any other relevant evidence in the
> individual's case record.

SSR 16-3p, 2016 WL 1119029, at *4; *see* 20 C.F.R.  § 404.1529(c)(2)-(3).  Such
evaluation includes consideration of "(i) the claimant's daily activities; (ii) the duration,
frequency, and intensity of the claimant's pain; (iii) precipitating and aggravating factors;

(iv) the dosage, effectiveness, and side effects of medication; and (v) the claimant's functional restrictions." *Vance v. Berryhill*, 860 F.3d 1114, 1120 (8th Cir. 2017); *see* 20 C.F.R. § 404.1529(c)(3); SSR 16-3p, 2016 WL 1119029, at *7. Although the "absence of objective medical evidence to support [a claimant's] complaints" is one "factor to be considered," "the ALJ may not discount a claimant's subjective complaints solely because they are unsupported by objective medical evidence." *Halverson*, 600 F.3d at 931-32; *see* 20 C.F.R. § 404.1529(c)(2); *see also, e.g.*, *Grindley*, 9 F.4th at 630.

This evaluation also includes consideration of a claimant's prior work history. 20 C.F.R. § 404.1529(c)(3); *see, e.g.*, *Swink v. Saul*, 931 F.3d 765, 770 (8th Cir. 2019); *Schwandt v. Berryhill*, 926 F.3d 1004, 1012 (8th Cir. 2019); *Bryant*, 861 F.3d at 782. A lengthy work history can support allegations of disability. *See, e.g.*, *Smith v. Comm'r, Soc. Sec. Admin.*, 738 F. App'x 889, 892 (8th Cir. 2018) (per curiam); *Black v. Apfel*, 143 F.3d 383, 387 (8th Cir. 1998). An ALJ may also consider whether "a claimant left work for reasons other than a medical condition." *Kelley v. Barnhart*, 372 F.3d 958, 961 (8th Cir. 2004); *see Goff v. Barnhart*, 421 F.3d 785, 793 (8th Cir. 2005); *see also, e.g., Medhaug v. Astrue*, 578 F.3d 805, 816 (8th Cir. 2009); *Black*, 143 F.3d at 387.

It is well settled that an ALJ need not "methodically" or "explicitly discuss each factor." *Schwandt*, 926 F.3d at 1012; *Renstrom v. Astrue*, 680 F.3d 1057, 1067 (8th Cir. 2012); *see, e.g.*, *Grindley*, 9 F.4th at 630; *Bryant*, 861 F.3d at 782; *Halverson*, 600 F.3d at 932. "Credibility determinations are the province of the ALJ, and as long as good reasons and substantial evidence support the ALJ's evaluation of credibility, [courts] will defer to [the ALJ's] decision." *Julin v. Colvin*, 826 F.3d 1082, 1086 (8th Cir. 2016)

(quotation omitted); *see Grindley*, 9 F.4th at 630 ("We normally defer to an ALJ's credibility determination."); *Hensley*, 829 F.3d at 934 ("We will defer to an ALJ's credibility finding as long as the ALJ explicitly discredits a claimant's testimony and gives a good reason for doing so." (quotation omitted)).

## 2. The ALJ's Assessment of Plaintiff's Statements Regarding Her Symptoms

The ALJ concluded that, while Plaintiff's "medically determinable impairments could reasonably be expected to cause [her] alleged symptoms," her "statements concerning the intensity, persistence and limiting effects of these symptoms [was] not entirely consistent with the medical evidence and other evidence in the record." Tr. 38. The ALJ found that Plaintiff's statements were not supported by the objective medical evidence and other evidence in the record, including Plaintiff's response to treatment and the reason she stopped working. At the end of the step-four analysis, the ALJ summarized:

> The objective medical evidence, as detailed above, suggests greater sustained capacity than described by [Plaintiff]. Notwithstanding [Plaintiff's] allegations, treatment records and examinations do not provide evidence that would reasonably support a finding that [Plaintiff] is as limited as alleged. Ultimately, [Plaintiff] alleges a greater degree of debilitation than the medical evidence can support.

Tr. 42.

Plaintiff asserts that the ALJ "considered and evaluated only the medical evidence to the exclusion of non-medical evidence" when assessing her statements regarding the nature of her symptoms. Pl. Br. at 26; *see also* Pl. Br. at 25 ("There is simply no

discussion or evaluation of the non-medical evidence."). According to Plaintiff, "the total sum of the analysis of the non-medical evidence" is the ALJ's discussion of her testimony as to why she stopped working. Pl. Br. at 23. *See infra* Section IV.B.2.c. Plaintiff asserts that "[t]here simply is no consideration of [her] daily activities, statements about the frequency and duration of symptoms, methods used to alleviate her symptoms, statements about factors that precipitate her symptoms or the other non-medical evidence," which she testified to at the hearing. Pl. Br. at 25. Plaintiff asserts "[t]here is no mention of any subjective complaints, only discussion of objective medical findings." Pl. Br. at 24. And when the ALJ did discuss the objective medical evidence, Plaintiff asserts that the "the ALJ improperly relie[d] upon notations that [her] conditions were 'stable'" to conclude that "she is able to work, or at least her subjective complaints are not supported." Pl. Br. at 22, 26.

### a. Discussion of Plaintiff's Statements Regarding the Intensity, Persistence & Limiting Effects of Her Symptoms

Plaintiff completed two different function reports. *See generally* Tr. 270-77; Tr. 289-96. In these function reports, Plaintiff reported experiencing fatigue and exhaustion from multiple sclerosis and depression. *See, e.g.*, Tr. 270, 289, 293, 294. She also experienced "brain fog and memory problems." Tr. 270; *see, e.g.*, Tr. 273, 274, 292, 294. Plaintiff had numbness, weakness, tingling, and stiffness in her upper and lower extremities, which made self-care difficult and her husband and son did all of the cooking, cleaning, and other household chores. *See, e.g.*, Tr. 270, 271, 274, 289, 290, 291, 294. Plaintiff used a cane when her legs felt weak. Tr. 276; *see* Tr. 289, 294.

Plaintiff reported that she needed to lie down frequently during the day. *See, e.g.*, Tr. 270. Plaintiff also experienced anxiety when she was around others. *See, e.g.*, Tr. 293. Plaintiff reported being able to lift less than five pounds, walk between 30 and 50 feet, and stand for "a couple of minutes." Tr. 275; *see* Tr. 294; *see also* Tr. 289. She also reported difficulty with manipulative activities like reaching and using her hands. *See, e.g.*, Tr. 275, 294. Plaintiff had difficulty concentrating and following both written and spoken instructions. Tr. 275; *see, e.g.*, Tr. 292, 293, 294. She also had difficulty with postural activities, such as squatting, bending, and kneeling. *See, e.g.*, Tr. 275, 294.

At the hearing, Plaintiff testified that she lives with her husband and son. Tr. 54. Plaintiff testified that she experiences fatigue, "brain fog," numbness in her upper and lower extremities, and difficulties with balance due to multiple sclerosis. Tr. 55-56. Plaintiff testified that she needs to lay down multiple times per day due to fatigue. Tr. 55; *see* Tr. 60-61. Plaintiff estimated that she could stand for approximately five minutes before feeling weak and needing to sit down. Tr. 56. Plaintiff similarly testified that she could use her arms and hands for approximately five minutes before they started to go numb. Tr. 56-57. Similar to the function reports, Plaintiff testified that she had difficulty with self-care and her husband and son did all of the cooking and household chores. Tr. 57. Plaintiff testified that she had difficulty concentrating and felt "foggy." Tr. 58; *see* Tr. 59. Plaintiff further testified that her anxiety and depression caused her to feel "really down" and she had "to lay down a lot." Tr. 59; *see* Tr. 60-61.

The ALJ expressly discussed both function reports as well as Plaintiff's testimony at the hearing in the decision:

> In the function report mentioned above, [Plaintiff] stated that she had difficulty engaging in exertional, postural, and manipulative activities due to her impairments. She alleged that she could not lift more than five pounds due to muscle weakness. She reported difficulties with selfcare and housework. Further, she stated that she used a cane to ambulate. At the hearing, she testified that she experienced numbness in the hands and feet, and difficulty with balance. She reported fatigue. She alleged that she could stand or use her hands for less than five minutes at a time. She stated further that she suffered from fibromyalgia.

Tr. 38. Later in the decision, the ALJ also noted that Plaintiff "testified to memory and concentration issues" at the hearing and "stated that she experienced [a] depressed and anxious mood." Tr. 39.

As such, it is not accurate to state that there was no discussion of Plaintiff's subjective statements regarding the intensity, persistence, and limiting effects of her symptoms. While Plaintiff may have preferred a more robust description of her reported difficulties with concentration, fatigue, and muscle weakness/stiffness, for example, or greater detail in summarizing her statements as to how these symptoms impacted her daily activities, including self-care, it cannot be said that the ALJ's decision lacked any discussion of Plaintiff's subjective statements or that such discussion was confined to her testimony as to why she stopped working. Moreover, while Plaintiff takes issue with transitional phrase "[t]urning to the objective medical evidence" used by the ALJ, Tr. 38, this phrase came after, among other things, the paragraph quoted above summarizing Plaintiff's statements regarding her symptoms in the function reports and at the hearing and discussion of her testimony as to why she stopped working. As the Commissioner points out, "none of . . . [this] could be considered objective medical evidence." Comm'r

Br. at 23.  *See* 20 C.F.R. § 404.1513(a)(1) ("Objective medical evidence is medical signs, laboratory findings, or both . . . ."); *see also* 20 C.F.R. § 404.1502(f).

### b.  Use of the Objective Medical Evidence & "Stability" of Plaintiff's Impairments

Plaintiff's assertion of error related to the ALJ's discussion of the objective medical evidence appears to be limited to the ALJ's use of "stable" to describe her physical and mental impairments.  Yet, Plaintiff does not actually take issue with the ALJ's recitation of the medical evidence.  Nor does she in fact "object to the ALJ's finding that her condition was stable."  Pl. Br. at 27.  Rather, Plaintiff "simply asserts that her condition was stable in that she was consistently disabled."  Pl. Br. at 27.

The ALJ provided a thorough discussion of the objective medical evidence regarding Plaintiff's multiple sclerosis, fibromyalgia, depression, and anxiety.  *See* Tr. 38-40; *see also* Tr. 34-36.  The ALJ concluded that, based on the medical evidence, each of these impairments "remained stable with treatment."  Tr. 38; *see* Tr. 39.

With respect to Plaintiff's multiple sclerosis, the ALJ noted that "[a]n MRI of the brain performed in July 2015, well before [Plaintiff's] alleged onset date, showed conspicuous demyelinating plaques."  Tr. 38 (citation omitted); *see* Tr. 355-56.  The ALJ also noted that "[s]ubsequent MRI tests of the brain performed in May 2016 and 2019 "showed numerous T2 signal abnormalities but no definite new lesions."  Tr. 38 (citation omitted); *see* Tr. 349, 522, 524, 526, 528-29; *see also* Tr. 440.  The ALJ noted that, during a follow-up appointment in March 2020, Plaintiff "had some give away weakness and shaking with movement," but otherwise "demonstrated 5/5 motor strength and

normal gait." Tr. 38; *see* Tr. 413, 414. At another follow-up appointment in January 2021, roughly a year later, the ALJ noted that that Plaintiff "exhibited tremor in the bilateral upper extremities," "mild kinetic movement," and "[h]er gait was mildly wide." Tr. 38; *see* Tr. 704-05; *see also* Tr. 702 (reporting "neuropathic pain as well as dysesthesias within her hands and feet"). At the same time, the ALJ also noted that Plaintiff "demonstrated 5/5 motor strength throughout" and "MRI tests of the brain and cervical spine performed at the time showed stable T2 hyperintensities consistent with multiple sclerosis." Tr. 38; *see* Tr. 704; *see also* Tr. 614 ("[N]o new or enlarged lesions noted on MRI imaging."), 634 ("No MR findings to suggest disease progression."), 722 (same). Approximately six months later, in June 2021, the ALJ noted that Plaintiff had "decreased sensation in [her] fingertips and toes," "mild kinetic tremor," and a "mildly wide gait." Tr. 38; *see* Tr. 815. Plaintiff continued, however, to have "5/5 motor strength throughout and normal muscle tone." Tr. 38; *see* Tr. 814-15. The ALJ observed that "[s]ubsequent treatment notes do not show abnormal f[i]ndings upon neurological examinations." Tr. 39. The ALJ concluded as a result that "the objective medical evidence shows that [Plaintiff's] multiple sclerosis (MS) has remained stable with treatment" and that "her recent imaging studies of the brain and cervical spine showed stable findings with no new lesions." Tr. 39.

As for Plaintiff's fibromyalgia, the ALJ observed that "it too has remained stable with treatment." Tr. 39. The ALJ explained that, "[a]t a visit in May 2019, before [Plaintiff's] alleged onset date, it was noted that [Plaintiff] had diffuse body pain consistent with fibromyalgia." Tr. 39 (citation omitted); *see* Tr. 445 ("endors[ing] some

diffuse body pains consistent with her fibromyalgia").  The ALJ observed, however, that
"[s]ubsequent treatment notes do not show that [Plaintiff] sought care for concerns of
fibromyalgia."  Tr. 39.  While a treatment note from March 2020 indicated complaints of
muscle pain, the ALJ pointed out that Plaintiff did "not show positive tender points or
impaired muscle tone on exams."  Tr. 39; *see* Tr. 409, 413-14.  The ALJ also noted that
Plaintiff "treated with Cymbalta with significant improvement of her symptoms."  Tr. 39;
*see* Tr. 445 ("feels like Cymbalta generally helps with this"); 440 (noting "significant
improvement" with Cymbalta in mood, energy, and pain).

The ALJ reached a similar conclusion with respect to Plaintiff's anxiety and
depression, finding that Plaintiff "remained stable with psychotropic medications."  Tr.
39.  The ALJ noted Plaintiff's testimony as to difficulties with memory and concentration
and experiencing depression and anxiety.  Tr. 39; *see, e.g.*, Tr. 55-56, 59, 62, 67.  The
ALJ then largely incorporated the prior analysis of the "paragraph B" criteria with respect
to Plaintiff's mental impairments from step three.  *See* Tr. 39-40; *see also* Tr. 35-37.  The
ALJ noted that Plaintiff had not "experienced any episode of decompensation or had a
psychiatric hospitalization during the relevant period."  Tr. 39; *see* Tr. 36-37.  The ALJ
pointed out that Plaintiff's mental functioning improved with medication.  Tr. 39; *see,
e.g.*, Tr. 380 (August 2020 note that Plaintiff "continue[d] to have excessive worry at
times, but" felt it was "manageable" with medication and denied feelings of sadness,
irritability, hopelessness, helplessness, worthlessness, and guilt).

The ALJ noted that, while Plaintiff exhibited a somewhat depressed mood during
the first consultative examination and was at times noted to be depressed and anxious as

part of mental-status examinations conducted by treatment providers, Plaintiff "was cooperative and maintained appropriate eye contact on exams." Tr. 39; *see, e.g.*, Tr. 666, 382, 392, 400, 621, 623, 682, 693-94, 695-96, 812, 870, 875; *see also, e.g.*, Tr. 614, 619. In the earlier "paragraph B" discussion, the ALJ also noted that Plaintiff's mood was euthymic during the second consultative examination and she was described as "cooperative and friendly." Tr. 35; *see* Tr. 833; *see also, e.g.*, Tr. 382, 870 (euthymic); Tr. 447, 616, 814 (no depression or anxiety). The ALJ noted that Plaintiff "denied harmful thoughts consistently." Tr. 39; *see* Tr. 35; *see, e.g.*, Tr. 383, 392, 400, 621, 680, 682, 693-94, 695-96, 870, 875; *see also, e.g.*, Tr. 380, 666, 833.

The ALJ similarly observed that, "although [Plaintiff] demonstrated limited insight and judgment at times," "her thought process was organized and coherent." Tr. 39; *see* Tr. 36; *see, e.g.*, Tr. 383, 392, 400, 621, 682, 694, 696, 870, 875; *see also, e.g.*, Tr. 833. As for Plaintiff's cognitive functioning, the ALJ found that Plaintiff "demonstrated essentially average intelligence and normal attention and concentration abilities despite difficulties with serial 7 tasks," but also recognized that Plaintiff's "mood abnormalities could limit her cognitive functioning." Tr. 40; *see* Tr. 36; *compare* Tr. 666 (difficulty with serial sevens but able to perform digit span test during first consultative examination) *with* Tr. 833 ("did not exhibit any significant problems with attention or concentration and . . . able to remain focused" during second consultative examination, including spelling the word "world" forwards and backwards); *see, e.g.*, Tr. 383, 392, 400, 447, 616, 621, 682, 814, 870. The ALJ additionally recognized that Plaintiff "demonstrated limited memory on standardized testing" during the consultative

examinations.  Tr. 40; *see* Tr. 35, 667, 833-36; *see also, e.g.*, Tr. 392.  At the same time, alongside the findings of the consultative examinations and as part of the "paragraph b" discussion, the ALJ also observed that Plaintiff "generally demonstrated normal memory and average intelligence upon mental status evaluations" when seen by her treatment providers.  Tr. 35; *see, e.g.*, Tr. 383, 400, 447, 616, 621, 682, 694, 695, 814, 870, 875.

At bottom, Plaintiff is asking this Court to conduct its own evaluation of the medical evidence and draw a different conclusion.  *See Hensley*, 829 F.3d at 934 ("Hensley's contentions that the ALJ should have weighed these facts differently or drawn different conclusions do not warrant relief under our deferential standard of review."); *see also Schmitt*, 27 F.4th at 1361 ("Despite Schmitt's dissatisfaction with how the ALJ weighed the evidence, it is not this Court's role to reweigh that evidence.").  It was not error for the ALJ to describe Plaintiff's physical and mental impairments as stable when the objective medical overall did not reflect a deterioration in Plaintiff's conditions and Plaintiff showed improvement with medication.  Nor was it outside the available zone of choice for the ALJ to conclude that "[t]he objective medical evidence . . . suggest[ed] greater sustained capacity than described by [Plaintiff]."  Tr. 42; *see Ross*, 92 F.4th at 779 ("Because the evidence supports two inconsistent conclusions, and both conclusions are in the zone of choice, we cannot reverse the ALJ's determination.").

### c.  Reason for Leaving Work

When considering the intensity, persistence, and limiting effects of Plaintiff's symptoms, the ALJ found significant Plaintiff's testimony that "her last job ended due to masking requirements for COVID and her inability to wear masks at work, not due to her

alleged limitations." Tr. 38. Based on this testimony, the ALJ concluded that Plaintiff

was not "as limited as alleged." Tr. 38. Plaintiff asserts that this is a mischaracterization

of her testimony and she testified "that an inability to wear a mask was one of her

impairment-related limitations." Pl. Br. at 23.

At the hearing, the ALJ asked Plaintiff why her previous job ended. The

following exchange took place:

> ALJ: [Plaintiff], I just have a couple questions. Looks like
> you did complete a very good work history report, but I
> wanted to ask you about your last job . . . . It ended on [sic]
> the end of March of 2020. What happened to that job? Why
> did it end?
>
> PLAINTIFF: Because of COVID and my anxiety with the –
> we were told we had to wear masks, and with my MS and my
> illnesses and anxiety, I had a really hard time doing that, and I
> decided it was best that I resign from there due to all of my
> problems going on also.
>
> ALJ: Okay. So before the COVID, had you been missing
> work . . . ?
>
> PLAINTIFF: Not a whole lot.

Tr. 61.

Plaintiff made similar statements to the consultative examiners. The first

consultative examiner noted that Plaintiff's position "end[ed] in early 2020 due to Covid-

19 conditions." Tr. 664. The second consultative examiner noted that Plaintiff "reported

anxiety and having to wear masks as the reason for quitting." Tr. 832. When describing

how her impairments limit her ability to work in a function report, Plaintiff stated: "With

anxiety I can't wear a mask, in the workplace, [and] they require that too." Tr. 270.

Plaintiff asserts that her testimony reflects that "she could not wear a mask for an entire workday due to her impairments, including anxiety and multiple sclerosis," and the ALJ did not consider whether "her inability to wear a mask for an extended period of time was related to her impairments." Pl. Br. at 24. According to Plaintiff, the ALJ stated "that her job loss and inability to wear a mask were wholly unrelated to her impairments." Pl. Br. at 24. The Commissioner counters that the ALJ "merely concluded that [Plaintiff's] decision to resign from a job that she had been attending regularly before the pandemic, due to masking requirements, did not support that she was 'as limited as alleged.'" Comm'r Br. at 24. The Commissioner also points out that Plaintiff has not cited to medical evidence "suggest[ing] that any of her impairments prohibited the wearing of a mask." Comm'r Br. at 24 (footnoted omitted).

Evaluating a claimant's testimony regarding the intensity, persistence, and limiting effects of her symptoms "is primarily for the ALJ to decide, not the courts." *Igo v. Colvin*, 839 F.3d 724, 731 (8th Cir. 2016). It would certainly be permissible, as Plaintiff advances here, to conclude from the testimony that the symptoms of Plaintiff's impairments impacted her ability to wear a mask during the workday. But, while Plaintiff may disagree, it is also permissible to conclude based on the testimony that the intensity, persistence, and limiting effects of Plaintiff's symptoms on her ability to work were not "as limit[ing] as alleged" because she had not missed much work before her employer instituted the masking requirements. Tr. 38. The ALJ properly took into account Plaintiff's work history and whether she may have stopped working for other reasons when considering the degree of impairment alleged and evaluating Plaintiff's

28

own description of the intensity, persistence, and limiting effects of the symptoms of her impairments. *See* 20 C.F.R. § 404.1529(c)(3); *see also Goff*, 421 F.3d at 793; *Kelley*, 372 F.3d at 961. Although the ALJ did not draw Plaintiff's preferred conclusion from the hearing testimony, the conclusion drawn by the ALJ was not outside the zone of choice. *See Ross*, 92 F.4th at 779.

### d.  Summary

Here, the ALJ explicitly acknowledged and considered Plaintiff's statements regarding the intensity, persistence, and limiting effects of her symptoms. Regardless of whether that discussion could have been more robust, the ALJ captured the essence of Plaintiff's allegations. *See* Pl. Br. at 25-26. The ALJ reasonably relied on the objective medical evidence as one consideration when evaluating Plaintiff's statements concerning her symptoms and properly took into account whether the objective medical evidence supported the degree of limitation alleged. *See Grindley*, 9 F.4th at 631; *see also Halverson*, 600 F.3d at 932. The ALJ also considered Plaintiff's response to treatment and her improvement with medication. *See Medhaug*, 578 F.3d at 813 ("An impairment which can be controlled by treatment or medication is not considered disabling."). Additionally, the ALJ properly took into account whether Plaintiff may have stopped working for other reasons. In sum, the ALJ's decision reflects that Plaintiff's statements regarding the nature of her symptoms were taken into account and considered and the ALJ gave good reasons for finding Plaintiff was not as limited as she alleged. *See Grindley*, 9 F.4th at 631-32; *see also Twyford v. Comm'r, Soc. Sec. Admin.*, 929 F.3d 517-18 (8th Cir. 2019). That it may have been possible to reach a different conclusion as

to the intensity, persistence, and limiting effects of Plaintiff's symptoms based on the record is not a basis for reversal. *See Ross*, 92 F.4th at 779 (where "the evidence supports two inconsistent conclusions" and "both conclusions are in the zone of choice," ALJ's determination cannot be reversed). The ALJ's assessment of the intensity, persistence, and limiting effects of Plaintiff's symptoms is supported by substantial evidence in the record as a whole.

## V. RECOMMENDATION

Based upon the record, memoranda, and the proceedings herein, and for the reasons stated above, **IT IS HEREBY RECOMMENDED** that:

1. Plaintiff's request for relief, ECF No. 8, be **DENIED**.

2. The Commissioner's request for relief, ECF No. 10, be **GRANTED**.

3. The ALJ's decision be **AFFIRMED**.


Dated: June__27__, 2024                     _____*s/ Tony N. Leung*_____
                                            Tony N. Leung
                                            United States Magistrate Judge
                                            District of Minnesota

                                            *Jennifer L. v. O'Malley*
                                            Case No. 23-cv-1822 (KMM/TNL)


## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being

served a copy" of the Report and Recommendation.   A party may respond to those objections within 14 days after being served a copy of the objections.  LR 72.2(b)(2).  All objections and responses must comply with the word or line limits set for in LR 72.2(c).